In re BOUZAGLOU, Joanne BOUZAGLOU, Council for Appellate Society, as voted, John P. Byrne, Council for Appellate League, Dean Howard, and Kathleen Smith, in favor. Good morning, Your Honor. I'm John P. Byrne. Please come to the appellant. The appellant should come to the podium. Well, both of you can come to the podium. Please introduce yourselves. Good morning, Your Honor. Shai Oved, O-V-E-D, for the appellant. Mr. BOUZAGLOU, perhaps, would be present in the courtroom. Thank you. Good morning. John P. Byrne, for the appellees. Please be seated. How much time do you wish to reserve? Thank you. May it please the Court, I'd like to reserve five minutes for rebuttal. We'll tell you when you get there. Please proceed. Thank you very much, Your Honors. This is one of the most high-stakes cases that I've ever had to deal with. I received a call from a potential client who was on the verge of a heart attack. A judgment entered against him, or about to be entered against him, for about $25 million, between him personally and his corporation. I said, wow, it must be a murder case. It must be something out of the ordinary. I met with the client, a young man, a contractor who's been in the industry for 10 years, never had a lawsuit before, approached an individual to develop a house that was red-tagged. The house itself was made out of a Sears Robux. Build yourself kit. My client had no contact with the successor trustee, the sister, other than the pleasantries while meeting at the house, seeing the property, relocating her. My client spent close to a half a million dollars out of his own pocket to develop a property from what was a shed and a shack to a multi-million dollar home in Santa Monica, California. On the days just before close of escrow and in line to hand a check over to Mr. McGinty for approximately half a million dollars, he learned that he had passed away. Successor trustee comes in, halts the sale. Stop! List pendants, lawsuits, everything comes to a screeching halt. We filed a bankruptcy. We tried to reorganize. We had some limits with the debt ceiling. We disputed the underlying judgment. There was a 109 evaluation in the first Chapter 13 case. We weren't able to reorganize. That's not before you. What is before you is the subsequent Chapter 7 case that we filed. I must say, even before we got into the procedural issues in this case or the procedural issues in the other case, I called state court counsel. I said, you did an excellent job. You did too good of a job for your clients. I said, how can we possibly resolve a $25 million judgment case? What do you want? My guy doesn't have the house that he was prepared to give them. The check was almost ready, just ready to close escrow. Nothing. I said, unfortunately, I don't know how to do it. My client's blood, sweat, and tears are in this house. I don't have a choice but to file a bankruptcy because of not just what happened in your lawsuit, but because of everything that he put into this house. We talked a little bit, and we couldn't get much further after that. I have a very great bankruptcy counsel that we've worked with, cordial, professional. I have nothing bad to say about opposing counsel. The facts of this case are a tragedy to my client. I can't go back in time. Nobody can. But my client deserves a fresh start. And I know you guys say, well, a $25 million judgment against him, how could he be entitled to the fresh start that an honest debtor is entitled to? Well, when I handled the Gomeshi and Saban case in the Ninth Circuit, I had a similar contractor case. That was also one of my cases that the panel had decided and had gone up to the Ninth Circuit. I had a similar situation. I had a licensing issue with the contractor who built the house for that plaintiff. They won an award against my contractor client for disgorgement, and we want all of our money back. So they got a $200,000 judgment. And I said, well, what are your damages? What's the money? You got the house, okay? So you paid the payments to the wrong entity or to the wrong individual. It was a licensing issue. Can I interrupt you for a second? I know this is, for you, heartfelt stuff, and this is very compelling, those arguments that you're making. But, you know, largely these are issues that you've lost at the state court level, at the trial court level. And you're now arguing to a bankruptcy court, and you need to focus on the legal issues that are here. If you're going to win today, it's because you're going to persuade us on that level, not on the equitable level. We can't go undo what's been done in that state court. If the issue preclusion or claim preclusion or some other issue here that you're arguing doesn't work, you need to tell us about that. I understand, Your Honor. I wanted to give you just the background, and I'm going to focus. No, I understand. You're very persuasive in that regard, but it's the wrong road. Okay. I know the panel is prepared. I'm expecting to be bombarded with questions. Don't let the baby face fool you. I've been here probably in the last 20 years. I see these gardens. I feel like I'm in Hawaii, but I get more nervous as I get older. I thought it would be easier to come in here, and it's not quite that case. Your Honor, the crux of this case, $25 million in excessive award to be entered against someone who never had the final opportunity to have the full and final determination of the underlying jury and judgment taken up on appeal. My client's entitled to due process. He's entitled to have, before you apply residue to conduct. But you could have had that due process. You chose to file bankruptcy. Yes, but that's. You lost control. It's not disputed that you lost control of that appeal right when you filed the bankruptcy. The appeal right wasn't valuable to anybody. That's not the point. I mean, you should. I mean, I did not see the challenge on the denial of the abandonment as part of your appeal. That was not an appealable order. The case went from the denial of the abandonment fairly quickly to case closure because no one really wanted to buy these rights. Now, if there were anybody else who said, hey, we want to buy these rights, I'd say, you know what, maybe there's some value there. But it wasn't. But there had to be an appealable order at some point. I mean, if there's a final decree in the bankruptcy case, you could have appealed from that. There's always an avenue to appeal pretty much every order eventually. You're going to get a final order. But there was no appeal from the denial of the abandonment ever, right? That's correct. The abandonment was without prejudice so that we could either refile it or take whatever avenues. It was denied on a notice technicality and a procedural technicality. But it never happened. The abandonment didn't happen other than the deemed abandonment at the end of the case. That's correct. So we didn't have to do anything further. And I want to respond to your question about we chose bankruptcy. We didn't have very many alternatives. We chose the bankruptcy. We went through the procedure. You had alternatives. You just, they were bad alternatives. I don't know that they were bad alternatives, Your Honor. We chose the bankruptcy mechanism because the client wanted the fresh start opportunity. But you were using that bankruptcy as essentially posting of a bond. How could anybody post a bond for $25 million? That's not quite the analysis, though. No, but that's part of the consideration. And there wasn't a judgment entered when the bankruptcy was filed initially. So we still didn't get there. They filed the motion early from the automatic stay. We said, you know what, let's go forward. So they got the full right to go and take their judgment to finality. And on the back end, they come and buy the appeal rights or say they're going to buy the appeal rights. And they never go through with it. We go back to square one. My client was going to hand a $500,000 check to the sellers just before he passed away. Instead, they litigated this for another four years. And the successor trustee ended up getting a check for a quarter million dollars. He got a check for $400,000. Appellate counsel gets a check for $50,000. The other appellate counsel gets another check for $50,000. And the entire process... If I may interrupt you, your best legal argument is that the application of this doctrine is discretionary. It cannot be applied under California law until the appeal is over with. And in a case where... In a bankruptcy case where the debtor was not permitted for whatever reason to pursue those appellate rights, the court should have exercised its discretionary right not to apply the doctrine. Is that your best argument? Yes, Your Honor. Beyond the five elements for res judicata, the sixth and mandatory additional inquiry is whether the imposition of the issue preclusion in the particular setting would be fair and consistent with sound public policy, and that's the In Re Cali case. So you have about five minutes left here. I do. Thank you. May it please the Court, good morning. The best legal argument that the appellant has was one that wasn't made. And now on appeal, they're raising it for the first time. And as I understand it, there's an assertion that there's a taking of property that amounts to a violation of the Fifth and Fourteenth Amendments to the United States Constitution. And so in that analysis, we should look at what was supposedly taken, how was it deprived, and by whom. On the answer of what was taken, it's an assertion that his, Mr. Boussiglou's, appellate rights were taken. They weren't his rights. Well, let's slide that to a little different analysis, continue with counsel's point. Do you agree that the bankruptcy court should have examined the exercise of discretion given the totality of facts on whether to apply issue preclusion? No, I think that the application of the full faith and credit clause required the bankruptcy court to give full faith to that judgment that was entered by a trial that spanned seven weeks. Under the circumstances of this case... But the trial is fine. It's the continuing to finality through an abortive appeal process. Well, the constitutional property or the property at issue is those appellate rights, and they didn't belong to the debtor. Right, but there was a motion to compel abandonment because they were valueless to the estate. Were they valueless? What value did they generate? They didn't generate any value. So why wasn't the motion to abandon granted? Because Mr. Boussiglou's trustee and another trustee appointed for my client opposed it. On the basis? I'm not sure exactly what that basis was, but it was denied by the bankruptcy court. I thought that basis was that it had value. Well, I suppose that there could have been an auction and a bidding for it. My client was interested in purchasing the appellate rights, and so... Why didn't she? Why didn't she? Because the price point was too high. Who was she bidding against? I don't know. Thank you. And the appeal was dismissed after the state court of appeals issued an order to show cause, presenting Mr. Boussiglou with an opportunity to show cause why his appeal shouldn't have been dismissed. He couldn't because it wasn't his appeal. That's in part, that's right. That's right. Because it wasn't his property rights. And so, going back to the question whether there's been an unconstitutional taking of property, it wasn't his property. I'm not sure the question is unconstitutional. It's whether it should have been considered by the bankruptcy court in the application of its discretion. Well, here we also should be mindful of the fact that there was an appeal, an appeal that was litigated fully to the point of a decision, and that appeal was litigated by a party who was considered to be, in and about the transactions involved in this case, the alter ego of Mr. Boussiglou. And that state court of appeal recognized that in its decision, and the argument was made by the entity that it had committed no fraud, and the state court of appeal dismissed that pretty much out of hand, saying there's plenty of evidence that you, Mr. Boussiglou, had committed a fraud here. And so, based on the finality of the, principle finality of judgments, the fact that in all fairness, he had his appeal, no, I don't think the bankruptcy court, based on the record before it, had discretion. So can we find that on appeal, that in all fairness, he had his chance and there's no harm? Or was that required to be found by the bankruptcy court? Well, I don't think the bankruptcy court was ever pointed in that direction by Boussiglou, and so I don't think it's fair to criticize the bankruptcy judge for not doing so. Here on appeal, we certainly can, and we've pointed to the decision of the court of appeals, which I think a fair representation of that decision is that that court of appeal in fact said, Mr. Boussiglou, you have had your appeal. And finally, I want to cite to a decision that I didn't raise in my opposition. And that's the case of In re Moser, 302 B.R. at 892. And this is Moser v. Goldman. And in that case, the appellate rights, the defensive appellate rights of the debtor were in fact purchased. And the debtor had suffered an adverse state court judgment, wanted to appeal it, and her, I should say, defensive appellate rights were purchased. She applied to the bankruptcy court and then to the district court on appeal, asserting that there was a violation of due process. And that issue was met head-on by the district court judge in the Central District of California. And the argument was rejected. The sale, and I'm quoting, the sale of the appellate rights is no different than the sale of any other property of a debtor. The court concludes that there is no basis in the record from which to find any violation of the debtor's Fifth or Fourteenth Amendment rights. One more citation. In a footnote, the district court said, the basic assumption that the debtors have an absolute constitutional right to appeal the state court judgment is flawed. Due process does not compel an absolute right to appeal. Here, the debtor's appellate rights were terminated by lawful process of the state courts of California. The bankruptcy court properly gave full faith and credit to those actions. Thank you. Thank you. You have four minutes and 42 seconds. When I started out by saying if anybody else had bid for these rights, that would be something else. It would have been fair game. Their client approached the trustee. Their client made the offer. So to say they didn't want to get into a bidding war and they didn't want to pay, they made the offer. They set the price. They negotiated the terms. There's declarations by the trustees that say, yeah, we're willing to buy these rights. So they could have avoided and had this come to a head, but they chose not to. And they did it in the perfect storm where the time for us to respond to the appellate court, and I didn't represent the state court appeals in the matter, the defendant appellants in the state court. But in response to the order to show cause, we couldn't show cause because we didn't own the rights at that time. Now, if you're saying the corporation is the alter ego, the alter ego, well, automatic stay would apply. Same bankruptcy issues apply. I'm not sure if it is. That would be imposition of liability. It's not bringing that corporation into the bankruptcy, is it? No, not directly bringing the corporation into the bankruptcy. I completely understand the automatic stay applies just to the individual or the corporation that's filing. I mean, that's not before anybody. But if you're going to make that argument and say, well, we've adjudicated it as to the corporation, I don't think the appellate court can say in good faith that this debtor had the full opportunity to litigate his issues through finality. Did he have arguments, issues he would have presented that the corporation did not? Was there something distinct about his appeal? Well, I think the punitive award is to him. It's something that he could have argued separately in the constitutionality of awarding ten times the compensatory damages. I mean, those are just individual arguments that he could have made along the way. I do note in the bankruptcy, in the appellate court decision, when they elected their remedies, they basically said that the plaintiffs waived their compensatory damages. I went back and looked at that appellate decision and said, well, if you waived your compensatory damages because you wanted the property back, which they took back and got the rescission award, the clerk of the superior court to enter a deed back in their favor, then you shouldn't be entitled to any damages. Well, those are the damages. What? Those are the damages. Right. The recovery. When they elected that remedy. I don't think they waived. They elected. There's a big difference. And regardless of how you look at it, why does that affect the punitive damages? Again, the crux of the punitive damages is they're excessive. I mean, this is not a murder case. I don't know how you get to ten times gross when the defendant was prepared to issue the check. We've said it from day one. We're prepared to honor the contract between the parties. But you only get to that if you're allowed to challenge the state court judgment in the bankruptcy court, right? Let me think about your question. We only get to challenge that if? Well, you can only raise the challenge to the punitive damages if the state court judgment doesn't have preclusive effect. Correct. And that's what we're asking for. The only prejudice to these plaintiffs are that they're going to have to proceed on the merits and they're going to have to present a case. Again. When you look at the jury finding, what's the misrepresentation? What's the concealment? What's the fraud? You don't get that. Is there a requirement of that for preclusion purposes? Does the jury have to say, on such and such a date, he said this to so-and-so? Is that the law? I don't know that it goes to that specific requirement. But here you're proceeding against multiple parties with multiple causes of action, elder abuse. I mean, there could be different bases for granting the punitive damages award. And we don't get that. We don't get that from the jury finding. Looks to me like you have a very detailed special verdict. That's the way it looks to me. It covers all the elements of the claims and the jury checked all the appropriate boxes. I don't think it covered all the elements for the causes of action. I went back and looked at the jury verdict this morning again. Now, question number one, was there misrepresentation? Was there fraud or some other concealment? Yes. But what was, what did he do? As I stand here today, I don't know what the basis for the fraud finding is. And that's why I think the bankruptcy court needs to find that out. And that's why the only prejudice is that we go forward on the marriage. Are you arguing that there could be some fraud under that verdict that would not be, excuse the double negative, non-dischargeable under 523A2? No. We haven't even gotten there. No, just in a general theoretical sense. Yes, I believe there might be a basis where it's not entirely non-dischargeable, especially if you don't meet the damage element like I argued in the Gomeshi versus Saban case. I've kept you over. I'm sorry. I apologize. Well, you don't need to apologize because you're answering the judge's question, which is exactly what you're here to do today. Thank you very much. Thank you very much. Thank you again. And the case is being submitted. We'll issue a memorandum of opinion. Thank you.
judges: Kurtz, Faris and Spraker